Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision (2022 NY Slip Op 06044)

Matter of Prisoners' Legal Servs. of N.Y. v New York State Dept. of Corr. & Community Supervision

2022 NY Slip Op 06044

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

533722
[*1]In the Matter of Prisoners' Legal Services of New York, Appellant,
v
New York State Department of Corrections and Community Supervision, Respondent.

Calendar Date:September 7, 2022

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Debevoise & Plimpton LLP, New York City (William C. Mattessich of counsel), and Prisoners' Legal Services of New York, Albany (Matthew McGowan of counsel), for appellant.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for respondent.

Pritzker, J.
Appeals from two judgments of the Supreme Court (Kimberly A. O'Connor, J.), entered February 11, 2021 and June 8, 2021 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review a determination of respondent denying petitioner's Freedom of Information Law requests.
In May and June 2019, numerous incidents took place in the yards of the Auburn and Clinton Correctional Facilities for which respondent conducted Tier III disciplinary hearings for four incarcerated individuals represented by petitioner — Charles Blanchard, Phillip Bradley, Antonion Christian and Shaun Martin. Following the hearings, petitioner filed separate requests pursuant to the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]) for each incident involving one of petitioner's clients seeking, among other things, the surveillance video and unusual incident (hereinafter UI) reports from each client's hearing. As relevant here, respondent denied the requests to the extent that each sought surveillance video footage of the incidents from the respective facilities, as well as Bradley's UI report. Specifically, with respect to Christian, petitioner contacted Auburn's superintendent via email to inquire about the video footage. Approximately one month later, respondent's counsel ultimately denied the requested video pursuant to Public Officers Law § 87 (2) (e), asserting that disclosing it would "interfere with law enforcement investigations." Petitioner administratively appealed the denial, which was denied by respondent's FOIL appeals officer, who again cited Public Officers Law § 87 (2) (e). The appeals officer took the position that, contrary to petitioner's contention, "the review of evidentiary records during a disciplinary hearing does not negate the applicability of FOIL exemptions in response to a subsequent FOIL request for [those] records."
Petitioner made a virtually identical request to Auburn regarding Bradley, which respondent denied based upon the fact that a criminal investigation was still ongoing, and that petitioner could renew its request upon the conclusion of the investigation. In its administrative appeal of the denial, petitioner asserted that respondent's former denial failed to specify the incarcerated individuals to whom the denial applied and did not cite the statutory exemption relied upon. Respondent's FOIL appeals officer upheld the denial, setting forth the same reasoning relied upon in Christian's denial and further relying upon Public Officers Law § 87 (2) (g) and (e). Petitioner made similar FOIL requests to Clinton for videos viewed at the disciplinary hearings of Martin and Blanchard; those requests were denied and the denial was upheld upon administrative appeal due to an "ongoing investigation," relying upon Public Officers Law § 87 (2) (e) and (f).
Petitioner then commenced this combined CPLR article 78 proceeding and [*2]action for declaratory judgment, seeking to compel disclosure of the remainder of the requested materials. Notably, during the pendency of the proceeding, respondent withdrew its claimed law enforcement exemption with respect to the Auburn footage and Bradley's UI report and provided petitioner with said materials. Accordingly, in addition to arguing that respondent had violated its obligations under FOIL, petitioner contended that respondent's subsequent disclosure of Bradley's UI report and the Auburn video footage established that petitioner substantially prevailed and was entitled to counsel fees and costs. In its February 2021 judgment, Supreme Court found that petitioner's claim was moot to the extent it had sought Bradley's UI report and the Auburn video footage relating to Christian and Bradley, as respondent had produced these materials subsequent to commencement of the proceeding, and that the mootness exception did not apply. The court found that petitioner's failure to serve a summons, in addition to its notice of petition, rendered its claims for declaratory relief not properly before the court. As to the Clinton video footage relating to Martin and Blanchard, the court found that it could not determine whether the withheld videos fell within a FOIL exemption without viewing the footage in camera and ordered that the remainder of the petition be held in abeyance pending review. Thereafter, in a June 2021 judgment, the court concluded, based upon its in camera review, that respondent had met its burden of establishing that disclosure of the requested material could lead to the possibility of endangerment such that the aforementioned footage fell within the exemption under Public Officers Law § 87 (2) (f). The court further declined to award petitioner counsel fees, stating that petitioner did not substantially prevail. Petitioner appeals.
Initially, contrary to petitioner's contention, we agree with Supreme Court that respondent's disclosure of Bradley's UI report and video footage from Auburn mooted the challenge to respondent's denial of the requests for those materials. "Where a petitioner receives an adequate response to a FOIL request during the pendency of his or her CPLR article 78 proceeding, [that issue is] moot because a determination [on that issue] will not affect the rights of the parties" (Matter of Gannett Satellite Info. Network, LLC v New York State Thruway Auth., 181 AD3d 1072, 1073-1074 [3d Dept 2020] [internal quotation marks and citations omitted]). Despite petitioner's assertion to the contrary, we do not find the exception to the mootness doctrine to be applicable (see Matter of Cobado v Benziger, 163 AD3d 1103, 1105 [3d Dept 2018]). To be sure, petitioner argues that, because the issue of whether surveillance footage of a facility may be exempt from disclosure under the law enforcement exemption and whether UI reports fall within the inter/intra-agency exemption have not been previously addressed by this Court [*3]and are of tantamount importance, the issue may be considered novel and substantial, and that it is likely to reoccur in light of respondent's tendency to rely upon these exemptions to refuse disclosure of video surveillance and UI reports. However, petitioner failed to establish that this issue is one that would typically evade review as these exemptions and their invocation are frequently examined by this Court (see Matter of Associated Gen. Contrs. of N.Y. State, LLC v New York State Thruway Auth., 173 AD3d 1526, 1527 [3d Dept 2019]; see e.g. Matter of Disability Rights N.Y. v New York State Commn. of Corr., 194 AD3d 1230, 1232 [3d Dept 2021]; Matter of McGee v Putnam County Assistant Dist. Attorney David M. Bishop, 192 AD3d 1446, 1449-1450 [3d Dept 2021]).[FN1]
We now turn to petitioner's assertion that Supreme Court erred in finding that the safety exemption applied to petitioner's FOIL requests for the Clinton video footage. "Under FOIL, all government records are presumptively open for public inspection and copying unless they fall within one of the enumerated exemptions of Public Officers Law § 87 (2)" (Matter of Laveck v Village Bd. of Trustees of the Vil. of Lansing, 145 AD3d 1168, 1169 [3d Dept 2016] [internal quotation marks, brackets, ellipsis and citations omitted]). As relevant here, "Public Officers Law § 87 (2) (f) exempts from disclosure materials that, if disclosed, could endanger the life or safety of any person," and respondent, "the agency in question, need only demonstrate a possibility of endangerment in order to invoke this exemption" (Matter of Hutchinson v Annucci, 189 AD3d 1850, 1854 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]). "Although exemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption, exemptions must be given their natural and obvious meaning where such interpretation is consistent with the legislative intent and with the general purpose and manifest policy underlying FOIL" (id. at 1853 [internal quotation marks, brackets and citations omitted]; see Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 225 [2018]).
In support of its position that disclosure of the Clinton footage — which includes three videos depicting incidents on June 10, 11 and 14, 2019 — would "endanger the life or safety of any person," respondent proffered an affidavit by the Deputy Superintendent of Security at Clinton, asserting that the materials sought "could jeopardize the safety and security of [Clinton's] personnel, [incarcerated individuals], and staff." To that end, the Deputy Superintendent expressed respondent's concern "that if [the] involved [incarcerated individuals] represented by petitioner are permitted access to these videos, they could be used to identify other inmates in these incidents, which were violent, race-based incidents [*4]involving rival groups of numerous [incarcerated individuals]." The Deputy Superintendent went on to detail each of the incidents depicted in the videos, all of which were related. He further attested that the investigations of said incidents confirmed that various incarcerated individuals "were recruiting others based on skin color for their version of a 'race war.'" As to the applicability of the safety exemption, the Deputy Superintendent opined that disclosure of the Clinton surveillance footage, akin to "public release of these videotapes," "would allow any individual to view, study, and identify participants in the aforementioned violence and race-related gang activity," which "could endanger the life or safety of any person if used by an [incarcerated individual] to identify other participants in the action for purposes of retaliatory action," as well as risk retaliatory violence against correctional staff. He expressed that "[t]he dynamics involved in prison violence and gang cases are complex," noting that gang affiliation frequently persists following incarceration and that protective custody for individuals suspected to be at risk of retaliatory violence is not sufficient to shield against that threat.
Upon review, we agree with Supreme Court's conclusion that respondent has satisfied its burden of demonstrating that the withheld materials fell within the safety exemption to FOIL disclosure as it "could potentially endanger the life or safety of the persons involved" in the incidents that took place on June 10, 11 and 14, 2019 "so as to be exempt under Public Officers Law § 87 (2) (f)" (Matter of Hutchinson v Annucci, 189 AD3d at 1854; see Matter of Kairis v Fischer, 138 AD3d 1360, 1361 [3d Dept 2016]; Matter of Williamson v Fischer, 116 AD3d 1169, 1171 [3d Dept 2014], lv denied 24 NY3d 904 [2014]). Although petitioner argues that the showing of this footage at petitioner's clients' disciplinary hearings presented the same risk of retaliation against involved persons, this assertion does not negate respondent's showing of the "'possibility of endangerment,'" which is sufficient to meet its burden (Matter of Kairis v Fischer, 138 AD3d at 1361, quoting Matter of Bellamy v New York City Police Dept., 87 AD3d 874, 875 [1st Dept 2011], affd 20 NY3d 1028 [2013]).[FN2]
Finally, petitioner argues that Supreme Court erred in determining that it was not entitled to counsel fees, particularly in light of respondent's initial denial of its requests and their subsequent disclosure of a portion of the requested materials subsequent to commencement of this proceeding. "[A] court in a FOIL proceeding shall assess, against such agency involved, reasonable counsel fees and other litigation costs in any case in which such person has substantially prevailed and the court finds that the agency had no reasonable basis for denying access to the records sought" (Matter of Aron Law PLLC v Town of Fallsburg, 199 AD3d 1286, 1290 [3d Dept 2021] [internal quotation [*5]marks, brackets, ellipses and citation omitted). "A petitioner substantially prevails under Public Officers Law § 89 (4) (c) when it receives all the information that it requested and to which it was entitled in response to the underlying FOIL litigation" (Matter of Competitive Enter. Inst. v Attorney Gen. of N.Y., 161 AD3d 1283, 1286 [3d Dept 2018] [internal quotation marks, brackets and citation omitted]).
Initially, with respect to the Bradley UI report and the Auburn video footage, although respondent's release of these documents rendered moot petitioner's challenge to respondent's initial denial as to these requests, "this development does not render moot respondent['s] challenge to Supreme Court's [denial] of counsel fees and costs" (Matter of Vertucci v New York State Dept. of Transp., 195 AD3d 1209, 1210 [3d Dept 2021], lv denied 37 NY3d 917 [2022]). However, petitioner did not substantially prevail in this proceeding because it did not receive all the information that it requested — namely, the Clinton surveillance footage. Even if petitioner can be said to have substantially prevailed in this proceeding because it ultimately obtained the UI report and Auburn video footage after commencing this proceeding, Supreme Court, nevertheless, did not abuse its discretion in denying petitioner's request for an award of counsel fees and costs because respondent "had a reasonable basis for denying access to the [requested materials] at the time of petitioner's FOIL request" (Matter of Associated Gen. Contrs. of N.Y. State, LLC v New York State Thruway Auth., 173 AD3d at 1528; see Matter of Save Monroe Ave., Inc. v New York State Dept. of Transp., 197 AD3d 808, 810 [3d Dept 2021], lv denied 38 NY3d 905 [2022]). To that end, respondent had denied disclosure of the aforementioned materials in light of the nonfinality of the inter/intra-agency UI report and because the UI report and Auburn footage fell within the law enforcement exemption as there were ongoing investigations regarding the incidents relating to those materials (see Public Officers Law § 87 [2] [e] [i]; [g] [iii]; see Matter of New York State Funeral Directors Assn. v New York State Dept. of Health, 200 AD3d 1255, 1257 n 2 [3d Dept 2021]).
Clark, J.P., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgments are affirmed, without costs.

Footnotes

Footnote 1: Additionally, we discern no abuse of discretion in Supreme Court's dismissal of petitioner's claims for a declaratory judgment in light of its failure to file a summons and combined petition/complaint, nor did the court err in failing to convert the proceeding into a hybrid proceeding/action, particularly where, as here, several of the requested declarations were mooted by respondent's disclosure of the corresponding requested materials (see Matter of New York Times Co. v City of N.Y. Police Dept., 103 AD3d 405, 407 [1st Dept 2013], lv dismissed 21 NY3d 930 [2013], lv denied 22 NY3d 854 [2013]; see also Premier Restorations of N.Y. Corp. v New York State Dept. of Motor Vehs., 127 AD3d 1049, 1049 [2d Dept 2015]).

Footnote 2: We note that the due process concerns differ in a disciplinary proceeding as opposed to a FOIL request.